T.C. Memo. 1998-397


UNITED STATES TAX COURT

SIDNEY DISHAL AND ANNA DISHAL, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 687-97.                    Filed November 10, 1998.


Dan L. Shehi, for petitioners.

Jeremy L. McPherson, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


PARR, <u>Judge</u>: Respondent determined deficiencies in petitioners'
Federal income taxes and penalties as follows:


| Year | Deficiency | Accuracy-Related Penalties<br>Sec. 6662 (a) |
|------|------------|---------------------------------------------|
| 1992 | $34,257 | $6,851 |
| 1993 | 53,429 | 10,686 |
| 1994 | 53,432 | 10,686 |

All section references are to the Internal Revenue Code in
effect for the taxable years in issue, and all Rule references

are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. References to petitioner are to Sidney Dishal.

After a concession,[1] the issue for decision is: Whether petitioners engaged in their horse breeding and horse racing activities during the years in issue with the objective of making a profit within the meaning of section 183. We hold they did.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and the accompanying exhibits are incorporated herein by this reference. At the time the petition in this case was filed, petitioners resided in Piedmont, California.

In 1945, petitioner went to work as a fabric salesman in southern California and was extraordinarily successful in that pursuit. In 1958, petitioner left his sales job and started a cotton processing business which manufactured cotton padding used in furniture and bedding. By his business and management skills, petitioner made the business unusually profitable. Petitioner partially retired from that business in 1990 and fully retired from it by 1992.

Petitioners were engaged in thoroughbred horse breeding and racing activities during the taxable years 1992, 1993, and 1994. Petitioners began their horse activities in 1976 with one horse.

---

[1] Respondent conceded that petitioners were not liable for the accuracy-related penalty pursuant to sec. 6662 (a) for each of the years in issue.

In each of the years 1988 through 1996, petitioners owned between 20 and 30 horses. Nearly all of the horses which petitioners owned between 1976 and 1996 were bred by petitioners. Petitioners purchased two females and half interests in two stallions during that 20-year period.

Petitioners have not raised stallions for stud purposes. Instead, they send their brood mares to stud ranches. When their brood mares produce male foals, petitioners may have the foals gelded. Petitioners believe that gelding a horse may improve the horse's racing performance and earnings. Brood mares may appreciate in value when their offspring are successful in horse races.

On a regular basis, petitioner personally visits the facilities where his horses are boarded and trained in order to inspect the condition of the horses and to consult with the caretakers and trainers. Including the time spent driving between his home and the horse facilities, petitioner normally spends at least 4 hours a day, 6 days a week, inspecting his horses and conversing with their handlers. Petitioners usually attend races in which their horses are participating. Petitioners send some of their horses to Arizona to race. These horses are more capable of racing successfully in Arizona than in California where the competition is greater.

The only physical assets used by petitioners in their horse breeding and horse racing activities are their horses. Petitioners

did not use any real estate owned by them in their horse breeding or horse racing activities in any of the tax years 1976 through 1996. Except for horses which are racing, in training to race, or boarded at a stud ranch, all of petitioners' horses are boarded at Rancho del Charro, a commercial horseboarding facility located approximately 30 miles southeast of petitioners' residence. Elvin Adams (Adams) is the ranch manager of Rancho del Charro.

The horses which are racing are trained and boarded at the racetrack. There are two major racetracks near petitioners' home. One of the tracks is approximately 10 miles northwest of petitioners' residence, and the other is about 35 miles southwest of petitioners' residence. The racetracks do not operate at the same time of year. Jeff Bonde (Bonde) trains petitioners' horses at the racetracks.

Several of petitioners' horses have won more than $100,000 over their racing careers. Petitioners have also been "breeding up" their horses for higher stakes races by upgrading their brood mares and the stallions with which they are bred. Petitioners currently have two horses entered in Breeder's Cup races which have purses over $1 million.

Several horses have had their racing careers, and; in some instances their lives, ended by unforeseen and unfortunate circumstances which were beyond petitioners' control. Petitioners' horses, Super High Pockets1, Miss Super Natural, Glorious and Bold,

Nipsey's Sundance, and Rusty's Lady all died in accidents at the racetrack. The horse Miss Nipsey Ann died after producing a foal. The horses Ann's Veil and Lexi's Dream developed tendon problems which ended their racing careers. Ann's Bold Lady fractured her knee and Super Clan developed a flesh-eating disease. The horses Pauli's Dream Girl and Moonlight Glory also had their racing careers diminished by injuries not specified in the record.

Petitioners did not have a written business plan for their horse breeding or horse racing activities at any time between 1976 and 1996. It has been petitioners' policy, however, to race the horses that are healthy, retire the females for breeding when they can no longer compete successfully on the racetrack, and race the males until they are claimed, sold, or given away. Petitioners have donated horses to the University of California and to the Sonoma County Horse Association.

Petitioners did not personally prepare written records of the income they received from individual race horses or from individual brood mares for the years 1989 through 1996. This was not necessary, because the trainers of the race horses maintained records of the horses' earnings. Professional organizations maintained records of breeders and owners awards. Statistics for a particular race horse, including lifetime earnings, the total number of races entered and the number of wins, places, and shows are available from professional horse organizations, newspapers, and racing forms.

Petitioners maintained complete records of their expenses from their horse breeding and horse racing activities during the years 1988 through 1996. Petitioners personally keep the books and pay the bills in their horse breeding and horse racing activities.

Neither petitioner nor Anna Dishal (Mrs. Dishal) has ever been engaged in any farming, breeding, or racing business other than the horse activities in which they have been engaged between 1976 and 1996. Neither petitioner nor Mrs. Dishal rides horses at all.

Between 1989 and 1996, petitioners had income from purses from horse races, sales of horses to third parties, from breeders' awards, and from owners' awards.

## OPINION

The Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Section 183 (a) generally limits the amount of expenses that a taxpayer may deduct with respect to an activity "not engaged in for profit" to the deductions provided in section 183(b). Section 183 (b) (1) provides that deductions which would be allowable without regard to whether such activity is engaged in for profit are to be allowed. Section 183(b)(2) further provides that deductions which would be allowable only if such activity were engaged in for profit are to be allowed, but only to the extent that, the gross income

derived from such activity for the taxable year exceeds the deductions allowable under section 183(b)(1). An activity is "not engaged in for profit" if it is an activity other than one with respect to which deductions are allowable for the taxable year under section 162 or section 212 (1) or (2) . Sec. 183 (c) .

In determining whether an activity is engaged in for profit, the Court of Appeals for the Ninth Circuit, to which this case is appealable, has stated that the taxpayer must show that he or she engaged in the activity with the primary purpose of making a profit. Wolf v. Commissioner, 4 F.3d 709, 713 (9th Cir. 1993). Petitioners bear the burden of proving the requisite intent. E.g., Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); Johnson v. Commissioner, 59 T.C. 791, 813 (1973), affd. 495 F.2d 1079 (6th Cir. 1974). Whether a taxpayer is engaged in an activity with the requisite profit objective is determined from all the facts and circumstances. E.g., Hulter v. Commissioner, 91 T.C. 371, 393 (1988); Taube v. Commissioner, 88 T.C. 464, 480 (1987); Golanty v. Commissioner, su ra at 426; sec. 1.1832(a) and (b), Income Tax Regs. More weight is given to objective facts than to the taxpayer's mere statement of his or her intent: E.g., Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs.

The regulations promulgated under section 183 list the following nine factors that should normally be taken into account

in determining whether an activity is engaged in for profit: (1) The manner in which the taxpayer carried on the activity, (2) the expertise of the taxpayer or his advisers, (3) the time and effort expended by the taxpayer in carrying on the activity, (4) the expectation that assets used in the activity may appreciate in value, (5) the success of the taxpayer in carrying on other similar or dissimilar activities, (6) the taxpayer's history of income or loss with respect to the activity, (7) the amount of occasional profits, if any, which are earned, (8) the financial status of the taxpayer, and (9) the extent to which elements of personal pleasure or recreation are involved. Sec. 1.183-2(b), Income Tax Regs. The list of factors in the regulations is not exclusive, and other factors may be considered in determining whether. an activity is engaged in for profit. These factors are not merely a counting device where the number of factors for or against the taxpayer is determinative, but rather all facts and circumstances must be taken into account, and more weight may be given to some factors than to others. Cf. Dunn v. Commissioner, 70 T.C. 715 (1978), affd. on another issue 615 F.2d 578 (2d Cir. 1980). Not all factors are applicable in every case, and no one factor is controlling. Abramson v. Commissioner, 86 T.C. 360, 371 (1986); Allen v. Commissioner, 72 T.C. 28, 34 (1979); sec. 1.183-2(b), Income Tax Regs.

Respondent determined that during the years in issue petitioners, were not engaged in horse breeding and horse racing for profit within the meaning-of section 183. We disagree.

Petitioners were very serious about their horse activities and operated them in a businesslike manner. Petitioners maintained extensive records and kept complete accounts of their expenses from their horse activities for the years in issue. Bonde, petitioners' horse trainer, testified that petitioner checked every piece of paperwork involved with his horses, including medical charts and veterinarian bills. Bonde further testified that petitioner expects a great deal from a trainer, including providing a leading rider to ride his horses.

In addition, petitioners had a business plan, which was to earn money by breeding top horses to run in superior races. This plan was evidenced by petitioner's actions and attempted changes to improve profitability. Petitioner consulted with knowledgeable individuals about horse breeding and began to "breed up" by upgrading his brood mares and the stallions with which they were bred. This plan has produced foals which have been performing better at the racetrack. Based on the facts of this case, we find that petitioners conducted their horse activities in a businesslike manner, and this indicates a profit motive. Sec. 1.183-2(b)(1), Income Tax Regs.

A taxpayer's expertise, research, and study of an activity, as well as his consultation with experts, may be indicative of a profit motive. Sec. 1.183-2(b)(2), Income Tax Regs. Petitioners consulted Bonde as the trainer of their racehorses. Bonde has been training horses for 25 years, at the time of trial had approximately 30 clients, and trains between 20 and 50 horses at one time. Adams, the

ranch manager of Rancho del Charro, where petitioners board their horses, supervised approximately 200 racehorses, of which 23 belonged to petitioners. Prior to coming to Rancho del Charro in 1992, Adams worked for 20 years for another horse breeder. Petitioner spent a substantial amount of time consulting and conversing with both Bonde and Adams regarding his horse activities. Petitioner's consultation with experts indicates a profit motive.

Petitioner is retired from his cotton processing business and is therefore able to devote a substantial amount of time to the horse activities. Petitioner personally visits the facilities where his horses are boarded and trained in order to inspect, the condition of the horses and to consult with the caretakers and trainers. Including the time spent driving between his home and the boarding facilities, petitioner spends at least 4 hours a day, 6 days a week; inspecting his horses and consulting with their trainers. Bonde, petitioners' horse. trainer, testified "[Petitioner] is very active. He's there very regularly, probably more than most of the clients I train for, actually. I don't ever remember him missing a race, and he comes out and inspects his horses at least five times a week." Adams, petitioners' ranch manager, testified that petitioner spends much time with his horses and that petitioner "examines all of his horses and feeds some of them, doctors them, cleans water troughs, [and] picks up rocks." The substantial amount of time and effort expended by petitioner in the horse activities indicates a profit motive. Sec. 1.183-2(b)(3), Income Tax Regs.

A record of substantial losses over several years may be indicative of the absence of a profit motive. Sec. 1.1832(b)(6),

Income Tax Regs. Respondent argues that petitioners' consistent history of losses in the horse activities is persuasive evidence that they did not expect to make a profit. The losses petitioners sustained, however, were in part due to unforeseen and unfortunate circumstances beyond their control which abruptly ended the racing careers, and in some instances the lives, of several of their horses. In addition, petitioners have abated their net losses from the horse activities in recent years. Furthermore, petitioners are capable of making up their losses from prior years since their horses are now entered in high stakes races. We conclude that the losses sustained are not an indication that the horse activities were not engaged in for profit.

Occasional profits which are earned from an activity may indicate a profit motive. Sec. 1.183-2(b)(7), Income Tax Regs. Several of petitioners' horses have won more than $100,000 over their racing careers. Furthermore, an opportunity to earn a substantial ultimate profit in a speculative venture may be sufficient to indicate a profit motive. Sec. 1.183-2(b)(7), Income Tax Regs. Petitioners have been "breeding up" their horses for higher stakes races. Petitioners currently have two horses entered in Breeder's Cup races which have purses over $1 million. This indicates a profit motive.

The presence of elements of personal pleasure or recreation in carrying on an activity may indicate that the activity is not engaged in for profit. Sec. 1.183-2(b)(9), income Tax Regs. On the basis of all the

facts and circumstances, we find that personal pleasure is not a motive in petitioners' horse activities.

After reviewing the entire record, we conclude that petitioners engaged in their horse breeding and horse racing activities with the primary purpose and dominant intent of making profit within the meaning of section 183.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered for petitioners</u>.